**Modified and Affirmed and Opinion Filed July 19, 2022**



In the
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00371-CR

**JEFFREY DEWAYNE ALEXANDER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80932-2021**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Carlyle

A jury convicted Jeffrey Dewayne Alexander of aggravated robbery and assessed punishment at twenty-three years' imprisonment. Mr. Alexander challenges the trial court's denial of his motion for directed verdict and the sufficiency of the evidence to support his conviction. Additionally, the State asserts the trial court's judgment should be modified to accurately reflect the record regarding Mr. Alexander's right to appeal. We affirm the trial court's judgment as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

The indictment in this case alleged that Mr. Alexander, in the course of committing theft of property, intentionally and knowingly threatened or placed the complainant, Abdul Jalloh, in fear of imminent bodily injury or death while using or exhibiting a deadly weapon.

At trial, Mr. Jalloh testified that around 4 a.m. on April 24, 2020, he drove to a Motel 6 in Addison, Texas, to "party" with a woman he had met online. He spent about an hour in a motel room with the woman, then left the room and walked toward where his car was parked. At that point, he had drunk "like, six bottles of wine" and "a bottle of Hennessy" and was "impaired."

Mr. Jalloh approached some people in the Motel 6 parking lot whom he had not met before, including Mr. Alexander, and began talking with them. At some point, a woman Mr. Jalloh had never met came out of a nearby motel room and Mr. Jalloh began "flirting" with her. A short time later, Mr. Jalloh and the woman began hugging and he kissed "her cheek or something like that." According to Mr. Jalloh, she suggested the two of them go to an apartment complex in Plano to "continue partying" with a female friend of hers. She asked him to drive. They got into Mr. Jalloh's car, a black Infinity G37, and she gave him directions.

When they arrived at the Plano apartment complex, the woman got out of the car quickly and began walking. Mr. Jalloh tried to follow her but lost track of her in the dark complex. Moments later, a person in a "blue or black" hoodie approached

–2–

Mr. Jalloh. The person was "tall a little bit." The hoodie was "pulled up" so only the top half of the person's face was visible. Mr. Jalloh testified the person pointed a gun at him and "told me to give him my keys and, you know, give him my stuff, robbing me scared." The gun was an "Uzi type gun" with an extended magazine. Mr. Jalloh gave the person his keys and wallet. His phone was in his car. The person pushed him to ground and kicked him in the face. Then, the person got into Mr. Jalloh's car and drove away. Mr. Jalloh got up and started "knocking on apartment doors trying to get police to come out and get my car—recover my stuff." Someone called 9-1-1 for him and police arrived.

Several weeks later, police returned Mr. Jalloh's car and phone to him. He stated he viewed a photographic lineup but was unable to identify the person who robbed him. He also testified that the only car he was in on the night of the robbery was his own.

During Mr. Jalloh's testimony, a video recording from the Motel 6's surveillance cameras was admitted into evidence and published to the jury. The video showed Mr. Alexander outside near the motel's parking area at around 5 a.m., wearing a blue hooded sweatshirt and distinctively-patterned black and white sneakers. Mr. Jalloh, drinking from a wine bottle, approached Mr. Alexander, who was slightly taller than Mr. Jalloh. They talked for about ten minutes, during which Mr. Alexander appeared to text on his phone several times. At 5:10 a.m., a woman came out of a nearby motel room and Mr. Alexander went into that room. Mr. Jalloh

and the woman talked and, after a short time, hugged. They got into Mr. Jalloh's car, which was parked near where they had been talking. Before the car pulled away, Mr. Alexander came out of the room and spoke briefly with Mr. Jalloh. At 5:27 a.m., Mr. Jalloh and the woman drove away in Mr. Jalloh's car. Mr. Alexander texted on his phone as he watched them leave. A few minutes later, Mr. Alexander got into a white Honda and drove away in the same direction. At 6:35 a.m., Mr. Alexander and the woman returned to the motel in the white Honda, retrieved their bags from their room, and left in the Honda.

Plano police detective Aaron Benzick testified he was the lead detective on this case. The 9-1-1 call was made at 6:07 a.m. The area where the offense occurred had no surveillance camera coverage. After interviewing Mr. Jalloh, he obtained video footage from the Motel 6 that showed Mr. Jalloh and Mr. Alexander talking outside of room 185. The motel's guestbook showed that Mr. Alexander and Caylon Mack checked into that room on April 23, 2020, and checked out the next day. Detective Benzick identified the woman who got into Mr. Jalloh's car as Ms. Mack.

The day after the robbery, police got a call from Ms. Mack requesting help because she was unable to get into her car, a white Honda Accord rental. According to Detective Benzick, the responding officers learned "there could potentially be evidence in that vehicle from a robbery." Inside the Honda, police found Mr. Jalloh's phone and a pair of distinctive sneakers identical to those Mr. Alexander was wearing in the Motel 6 surveillance video. Detective Benzick interviewed Ms. Mack and

"g[o]t a location where the victim's car may have been," which was a Dallas apartment complex on Simpson Stuart Road. Police found Mr. Jalloh's car at that Dallas apartment complex and learned Mr. Alexander was living there. About a week later, police arrested Mr. Alexander in that apartment complex's parking lot. He was carrying a semiautomatic handgun with an extended magazine.

Detective Benzick testified the Motel 6 was a fifteen to twenty minute drive from the Plano apartment complex where the robbery took place. He stated Mr. Alexander had enough time to commit the robbery, "ditch" Mr. Jalloh's car somewhere, and return to the motel by 6:35 a.m.

Following the presentation of that evidence, the State rested. Outside the jury's presence, defense counsel moved for a directed verdict "based on that there's been a lack of identification of Mr. Alexander as the man who robbed Mr. Jalloh." The trial court denied that motion.

Mr. Alexander testified he is thirty-four years old and has three children, including one with Ms. Mack. At the time of these events, she was several months pregnant with their child. She lived in McKinney and he lived in Dallas. They "really wasn't together" because "she was pregnant and she was going through the emotions, and we was getting into it." They had "like a love/hate relationship" and would "meet halfway" at motels "to be together."

At 5 a.m. on the date in question, Mr. Alexander was outside their room at the Motel 6 "just getting fresh air" and talking to other people who were "out there

partying." Ms. Mack was asleep in the room. Mr. Jalloh approached Mr. Alexander and they began talking "about drugs." Mr. Jalloh seemed like he "was under the influence" but "was aware of what he was doing." While they talked, Mr. Alexander texted his friend Angel, trying to get cocaine to sell to Mr. Jalloh. Angel lived at the Plano apartment complex where the robbery took place. At some point, Mr. Alexander went inside the motel room to use the bathroom. Ms. Mack woke up and went outside.

When Mr. Alexander came back out, Ms. Mack was in Mr. Jalloh's car. Mr. Alexander "was really dumbfounded" but "knew she had her reason what she was doing" and would not "put herself in no situation." Mr. Alexander texted her and she told him they "were going to get something to eat" and Mr. Jalloh "was still looking for some, you know, stuff." He texted her to take Mr. Jalloh to Angel's apartment complex. Then, he headed there in the Honda. He arrived before Mr. Jalloh and quickly purchased cocaine from Angel. Several minutes later, Mr. Jalloh arrived and parked next to him. Ms. Mack got out of Mr. Jalloh's car and into the Honda and told Mr. Alexander she was "ready to go." Mr. Alexander made the sale to Mr. Jalloh and then left with Ms. Mack.

Mr. Alexander testified that four or five days later, Angel came to the Dallas apartment where he was living to sell him more drugs. Angel was driving Mr. Jalloh's car. Angel told Mr. Alexander he had lost the car's key fob, and Mr. Alexander told him to "just park the car over here." Mr. Alexander did not recognize

the car until Angel told him "what happened." Mr. Alexander stated he believes that Angel "is the one who took that car." He also testified he bought an extended-magazine handgun from Angel about three days after the robbery. Mr. Alexander stated he did not have a gun with him on the night of the robbery.

On cross-examination, Mr. Alexander acknowledged that his current testimony was "very different" than what he had told Detective Benzick. He admitted lying to Detective Benzick multiple times and stated he did so because he was trying to protect Ms. Mack. He stated he was telling the truth now. He also testified Mr. Jalloh got into the Honda for "about a minute" when he purchased the cocaine on the night in question and thus could have left his phone in the Honda at that time.

### Evidentiary sufficiency

In assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We defer to the factfinder to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Hooper*, 214 S.W.3d at 16. The reviewing court determines whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* at 17.

"A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction." *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); *see also Freeman v. State*, 340 S.W.3d 717, 730 (Tex. Crim. App. 2011) (equating "instructed verdict" with "directed verdict"). "In reviewing the sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict." *Madden*, 799 S.W.2d at 686.

A person commits aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and, while doing so, uses or exhibits a deadly weapon. *See* TEX. PENAL CODE § 29.03(a); *see also id.* § 1.07(a)(17)(A) (gun is deadly weapon).

In his two issues, Mr. Alexander contends (1) the trial court "erred in denying Appellant's motion for directed verdict after the State completed its case-in-chief and rested without proving that Appellant was the person that committed the alleged aggravated robbery" and (2) the evidence is insufficient to support his conviction "as there was no evidence that Appellant was the person the alleged victim claims 'robbed' him."

To the extent Mr. Alexander asks us to consider only the State's evidence in reviewing the denial of his directed verdict motion, we decline that request. As required, we consider all the evidence in reviewing a motion for directed verdict. *See Madden*, 799 S.W.2d at 686; *see also Foster v. State*, No. AP-74,901, 2006 WL 947681, at \*5 n.7 (Tex. Crim. App. 2006) ("We have . . . held that the denial of an instructed verdict motion is a legal sufficiency challenge requiring a consideration of all the evidence. [citing *Madden*, 799 S.W.2d at 686]. We, therefore, decline appellant's invitation not to consider any evidence presented after the denial of appellant's motion for instructed verdict made at the close of the prosecution's case-in-chief."); *Sanchez v. State*, No. 05-15-00098-CR, 2016 WL 3947841, at \*3 n.1 (Tex. App.—Dallas July 15, 2016, pet. ref'd) (mem. op., not designated for publication) (declining to consider only State's evidence in reviewing denial of directed verdict because established law requires review "based on all the

evidence"). Because the standard of review is the same, we consider Mr. Alexander's first and second issues together.[1]

Mr. Alexander contends (1) the evidence regarding identity "was entirely circumstantial and sparse, at best," and (2) "the alleged victim's inability to identify Appellant as his robber and his testimony that the robber may have worn a different colored 'hoodie' than the one Appellant was wearing created reasonable doubt such that a rational trier of fact could only have convicted Appellant based on a mere guess or speculation that Appellant was the person that robbed the alleged victim."

The evidence showed Mr. Alexander is slightly taller than Mr. Jalloh and was wearing a blue hooded sweatshirt just before the robbery. After the two of them talked in the motel parking lot, Ms. Mack, visibly pregnant, came out of the room she was sharing with Mr. Alexander, flirted with and hugged Mr. Jalloh, and suggested he drive her to a female friend's apartment to "party." She and Mr. Jalloh left at 5:27 a.m. Several minutes later, Mr. Alexander left in a white Honda. At the Plano apartment complex, Ms. Mack walked away quickly and Mr. Jalloh could not find her. It was dark and he was intoxicated. At about 6 a.m., he was robbed by a person with an extended-magazine handgun who stole his car with his phone inside.

---

[1] We also decline Mr. Alexander's request to revive and apply the factual sufficiency standard abolished in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.). The court of criminal appeals has instructed that we must "review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*." *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Thus, "we are prohibited from conducting a factual sufficiency review." *Mixon v. State*, No. 05-20-00391-CR, 2022 WL 202960, at *3 (Tex. App.—Dallas Jan. 24, 2022, pet. ref'd) (mem. op., not designated for publication).

He described the robber's hooded sweatshirt as "blue or black" and could see only the upper portion of the person's face. Mr. Jalloh was not in any car other than his own that night. At 6:35 a.m., Mr. Alexander and Ms. Mack returned to the Motel 6 in the white Honda and checked out of their room. The next day, police found Mr. Jalloh's phone in Ms. Mack's white Honda. Ms. Mack told police that Mr. Jalloh's car was at the apartment complex where Mr. Alexander was living. When police arrested Mr. Alexander, he was carrying an extended-magazine handgun.

Based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict, *see Hooper*, 214 S.W.3d at 17, a reasonable jury could have inferred Mr. Alexander was the person who robbed Mr. Jalloh. *See Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) ("Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence."). Thus, the evidence is sufficient to support Mr. Alexander's conviction and the trial court did not err by denying his motion for directed verdict. *See Jackson*, 443 U.S. at 319.

## The State's cross-point

The State asserts in a cross-point that this Court should delete the judgment's special finding of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." The State contends the finding "is in conflict with all other aspects of the record," including the trial court's certification of Mr. Alexander's right of appeal.

This Court has the power to modify the trial court's judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). When a trial court's certification of a defendant's right of appeal conflicts with the written judgment regarding the defendant's right to appeal, the certification controls. *See Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "This conclusion is particularly apt if the remainder of the record supports the statement in the certification." *Id*.

The record shows Mr. Alexander pleaded "not guilty" and a jury tried and convicted him and assessed punishment. At the conclusion of sentencing, the trial court stated to him, "And you're already aware of your rights to appeal." The record also includes the trial court's written certification of Mr. Alexander's right of appeal, which states this "is not a plea-bargain case, and the defendant has the right of appeal." *See* TEX. R. APP. P. 25.2(d). On this record, we conclude the trial court's judgment should be modified to delete the special finding of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." *See Grice*, 162 S.W.3d at 645.

We affirm the trial court's judgment as modified.


210371f.u05
Do Not Publish
Tex. R. App. P. 47.2

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JEFFREY DEWAYNE
ALEXANDER, Appellant

No. 05-21-00371-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-80932-
2021.
Opinion delivered by Justice Carlyle.
Justices Myers and Goldstein
participating.

Based on the Court's opinion of this date, we **MODIFY** the trial court's judgment to delete the trial court's special finding of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 19th day of July, 2022.